# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Sidney Catlett, | ) | No. 16 C 3867 |
| Plaintiff | ) | Judge Virginia M. Kendall |
| v. | ) | |
| Infinity Healthcare Management of Illinois LLC, Parkshore Estates Nursing and Rehabilitation Center, LLC, Midway Neurological & Rehabilitation Center, LLC, Carrie DiPaolo, an individual, and David Schechter, an individual, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sidney Catlett filed a labor dispute in Illinois state court against Defendants Infinity Healthcare Management of Illinois, LLC; Parkshore Shore Estates Nursing and Rehabilitation Center, LLC; Midway Neurological & Rehabilitation Center, LLC; Carrie DiPaolo; and David Schecter. The state case (Cook County Circuit Court Case No. 2016-L-000533) alleged five counts: fraudulent inducement; breach of contract; civil conspiracy; discrimination and retaliation on the basis of age and disability under the Illinois Human Rights Act; and aiding and abetting discrimination and retaliation under the Illinois Human Rights Act. Defendants removed the case to this Court under Section 301 of the Labor Management Relations Act ("LMRA") (29 U.S.C. § 185) pursuant to 28 U.S.C. §§ 1331, 1367, and 1441. Defendants now move to dismiss the case pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the following reasons, Defendants' Motion to Dismiss

1

[11] is granted with respect to Counts I-III, and the Court declines to hear the remaining state claims.

## BACKGROUND

Defendant Parkshore hired Plaintiff Sidney Catlett as a housekeeper on August 11, 2000. (Dkt. 1, Ex. A, at 11.) The Union Local 743 ("Union") represented Catlett in this job, and a collective bargaining agreement ("CBA") governed his employment. (Dkt. 1, Ex. B, at 5.) The CBA provides management the right to discharge for just cause under Article 3, and prohibits discrimination, including on the basis of age and disability, under Article 5. (*Id.*) The CBA established a dispute resolution mechanism under Article 18, stating: "[a]ny difference between the Employer and the Union or an employee with respect to the interpretation or application of or compliance with, this Agreement or with respect to disciplinary action taken with any employee…" is to be settled pursuant to the CBA's grievance and arbitration provisions. (*Id.* at 14-15.) The CBA also outlines a four-step process. The employee should: (1) orally discuss his grievance with an immediate supervisor, and if that does not satisfy the dispute, (2) submit a written grievance signed by the employee and union Steward to the employer's Administration and attend a meeting, after which the Administrator provides a written follow-up response. If the matter continues unadjusted, (3) the Union may appeal the matter to the facility owners or representatives and, as needed, (4) request that the employer refer the matter to a mutually-agreed upon impartial arbitrator or Federal Mediation and Conciliation Service for binding arbitration. (*Id.*) Grievances involving discharge must be presented for the second step within five workdays from the date of discharge, or the grievance is waived, and any grievance not filed within a seven day period after the incident is barred. (*Id.*)

Sometime in 2013, Catlett suffered from multiple medical issues, including Bell's Palsy, hypertension, diabetes, back problems. (Dkt. 1, Ex. A, at 12.) His supervisor, Alison Credit, asked him if he had a learning disability and allegedly told union representatives that he was on suicide watch due to his disabilities. (*Id.*) On January 17, 2014, Credit and Catlett's nursing supervisor, LaToya Smith, reported seeing Catlett fall asleep in the break room at 9:45 p.m. (*Id.*) On January 22, 2014, Parkshore allegedly terminated Catlett for falling asleep during his lunch break. (*Id.*) On January 23, 2014, Local 743 filed a grievance on Catlett's behalf, even though Catlett did not sign the grievance. (Dkt. 27, Ex. 1, at 26.) On March 5, 2014, Jesse Stanton, the Steward from Local 743 representing Catlett, wrote a letter to the Administrator of Parkshore Estates stating that the grievance had not been satisfactorily resolved between the Union and Parkshore Estates and that the matter was being submitted to arbitration. (*See id.*, Ex. 1, at 28.) Stanton sent a document request on April 3, 2014 and followed up on April 8, 2015 and May 1, 2014. (*See id.*, Ex. 2, at 31-33.) Parkshore responded around May 20, 2014. (*See id.*, Ex. 1, at 3.) That same day, Catlett filed a charge with the Illinois Department of Human Rights claiming he was discharged based on his age and disabilities. (*See* Dkt. 1, Ex. A, at 12.)

On May 22, 2014, Stanton arranged a pre-arbitration meeting with Defendants to discuss Catlett's termination. (*Id.* at 13.) The meeting included Catlett, Stanton, Credit, and Defendant DiPaolo, Infinity's Vice-President of Operations. (*Id.*) DiPaolo asked Catlett what it would take for him to drop the Illinois Department of Human Rights ("IDHR") claims against Parkshore. Catlett said that he wanted Defendants to reinstate his job, release his unemployment benefits for the time that he was terminated, and amend his seniority and benefits back to his original date of employment. (*Id.*) Defendant Schechter agreed to the terms, except that he said Catlett could not return to work at Parkshore. Instead, he said that Catlett could return to work at Midway, another

Infinity facility, on June 16, 2014. (*Id.*) Stanton told Catlett that Infinity approved the Settlement Agreement, and Catlett withdrew his IDHR claims on June 11, 2014, as agreed. (*Id.*)

On June 16, 2014, Catlett showed up to start work at Midway, as instructed, but no one at Midway expected him. When the Housekeeping Manager, James Richardson, showed up, he contacted Infinity and put Catlett to work. (*Id.*) The next day, a nurse at Midway requested that Catlett provide a urine sample during his lunch. (*Id.*) Ten minutes later, the Floor Nurse who took his sample told Catlett to see Richardson. (*Id.*) Richardson initially told Catlett to go back to work and then, fifteen minutes later, told Catlett that Catlett's urine sample had tested positive for marijuana, and he was terminated. (*Id.*) Richardson allegedly then told Catlett to get his own drug test because Infinity had "hooked him up." (*Id.*) Catlett allegedly took a drug test at an accredited laboratory that same day, which came back negative. (*Id*.) Catlett attempted to show the negative results to Midway, but Midway refused the results. (*Id.*) This suit followed.

## **LEGAL STANDARD**

A complaint must contain factual matter sufficient to state a claim that is plausible on its face to survive a 12(b)(6) challenge. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *See Visiting Nurses Ass'n of Southwestern Indiana, Inc. v. Shalala*, 213 F.3d 352, 354 (7th Cir. 2000). In making the plausibility determination, the Court relies on its "judicial experience and common sense." *Iqbal,* 556 U.S. at 678. If the factual allegations are

well-pleaded, the Court assumes their veracity and then proceeds to determine whether they plausibly give rise to relief. *Id* at 679. For purposes of this motion, this Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See id.* at 678; *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## **DISCUSSION**

Defendants move to dismiss Catlett's Complaint on the grounds that each claim is preempted as a contract governed by Section 301 of the LMRA, either because the claims require the Court to analyze the terms of the Settlement Agreement, or alternatively that the claims are inextricably intertwined with the CBA. Defendants further argue that Catlett failed to exhaust the remedies available to him through the dispute resolution process outlined by the CBA; that his union, Local 743, breached its duty of fair representation; and that he failed to file his claims on a timely basis. Even if they are not preempted, Defendants argue that Catlett fails to plead sufficient facts to survive a motion to dismiss on his state law claims for civil conspiracy and discrimination.

Defendants removed this action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1947). (Dkt. 1.) Section 301 gives federal district courts original jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce," including grievance settlements. 29 U.S.C. § 185(a); *see Olson v. Bemis Co., Inc., et al.*, 800 F.3d 296, 301 (7th Cir. 2015) (finding that a grievance settlement is a contract under § 301 because it is a contract between a union and an employer). A state claim is independent of a CBA for Section 301 preemption purposes "as long as the state-law claim can be resolved without interpreting the agreement itself." *Lingle v. Norge Div. Magic Chef*, 486 U.S. 399, 410, 108 S.Ct. 1877, 100

L.Ed.2d 410 (1988). When a state law claim "substantially depends" on the interpretation of terms within the CBA, the claim must be dismissed as preempted by federal labor-contract law or treated as a Section 301 claim. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 202-03, 210 (1985). State law torts and rights that exist independent of the terms of the contract are also preempted if their terms are "inextricably intertwined" with consideration for the terms of the contract. *Id.* at 211-13. Section 301 of the LMRA preempts "all state-law claims that require the interpretation of a [CBA] or any other covered labor contract." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013). The need to consult the CBA does not necessarily preempt state law claims. *See Lividas v. Bradshaw*, 512 U.S. 107, 129 (1994). The Court must look to the facts alleged and determine whether the CBA is merely referenced or requires interpretation. *See e.g.*, *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 499 (7th Cir.1996) (determining wage increases and bonuses required interpretation of CBA's provisions).

A plaintiff cannot avoid Section 301 preemption by withholding mention of the statute in his or her complaint. *Atchley*, 101 F.3d at 498; *see also Filippo v. Northern Indiana Public Service Corp.*, 141 F.3d 744, 750-51 (7th Cir. 1998). Similarly, a plaintiff cannot avoid the reach of Section 301 by failing to refer specifically to the CBA governing his employment. *See Stallcop v. Kaiser Foundation Hopsitals*, 820 F.2d 1044, 1048 (9th Cir. 1987) (court's consideration of CBA is appropriate to investigate true nature of employees' allegations for preemption purposes).

A. **Breach of Contract Claim (Count II)**

The Court begins by analyzing Catlett's breach of contract claim because this is the claim that gave rise to the Complaint's original jurisdiction after this Court found that the Settlement Agreement constituted a contract arising under LMRA Section 301. (Dkt. 34.)

Defendants move to dismiss Catlett's Complaint on the grounds that each claim should be preempted as a contract governed by Section 301 of the LMRA because the claims require the Court to analyze the terms of the Settlement Agreement, or alternatively, that the claims are inextricably intertwined with the CBA. Defendants further allege that Catlett fails to exhaust the remedies available to him through the dispute resolution process outlined by the CBA; fails to allege that the Union breached its duty of fair representation; and that the matters are time-barred.

A grievance settlement is a contract between a union and an employer for the purposes of LMRA Section 301, regardless of whether the interpretation of the settlement agreement refers to the CBA. *Olson*, 800 F.3d at 301-02. In order to evaluate the substance of a breach of contract claim under Section 301, the Court must first consider whether the circumstances allow the individual former employee to sue. *See id.* at 303 (finding that "[s]uch suits are clearly allowed, at least in some circumstances.").

Generally, if the CBA obliges the plaintiff to pursue alternative-dispute resolution, he must first "'exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" before going to court." *Id.* (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983)). Courts require this for an alleged breach of a settlement agreement, as well as a breach of the initial underlying contract. *Id.* If the outcome of an agreement does not satisfy the employee, he must state a Section 301 claim for unfair representation and file a hybrid suit against both his employer (or former employer) and the relevant union. *Id.* (citing *Cleveland v. Porca Co.*, 38 F.3d 289, 296-97 (7th Cir. 1994)). A settlement agreement is presumed arbitrable under a CBA unless the parties explicitly state otherwise. *Olson*, 800 F.3d at 304 (citing *Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 175 (7th Cir. 1987)).

Here, as this Court previously found, Section 18.1 of the parties' CBA provided for a dispute resolution process that precipitated Catlett's Settlement Agreement, which is a contract under Section 301. (Dkt. 34.) The CBA obliges members to pursue the four-step alternative-dispute resolution outlined for "any" dispute between employee and employer as outlined by Section 18.1 of the CBA. (Dkt. 1, Ex. B, at 14-15.) Because of this, under *Olson*, Catlett must first exhaust these internal grievance mechanisms before bringing a breach of contract claim to court. *See Olson*, 800 F.3d at 303. Catlett engaged in dispute resolution for his initial discharge related to his allegedly falling asleep in the break room. Even though he did not sign the initial written statement submitted by Stanton, he attended the pre-arbitration meeting and agreed to drop his state law claims in exchange for reinstatement and restoration of his seniority and benefits. (*See* Dkt. 1, Ex. A, at 12.) However, when Catlett was discharged from Midway, this time for allegedly testing positive from a marijuana test, the facts as pled do not show that he first pursued alternative-dispute resolution as required by the CBA. Instead, he filed his claims in Illinois state court even though the CBA did not provide an explicit provision that allowed employees to opt out of this process. (*See* Dkt. 1, Ex. A, at 12; Dkt. 1, Ex. B, at 14.) Without such a provision, as in *Olson*, Catlett's claim is presumed arbitrable and must be pursued through the process outlined by the CBA before bringing a claim to court. *See Olson*, 800 F.3d at 303-04; *see e.g.*, *Chicago Reg'l Council of Carpenters, United Bhd. of Carpenters and Joiners of America v. Joyce Installation Co., L.L.C.*, No. 10-CV-5314, 2011 WL 635864, at *2-3 (N.D.Ill. Feb.10, 2011) (holding that collective bargaining agreement required remedy to be sought by arbitration before filing a lawsuit where employer failed to comply with a settlement agreement to resolve grievance filed by terminated employees). Catlett therefore has not exhausted his claims.[1] Accordingly, Catlett fails to state a breach of contract claim under Section 301.

---

[1] Catlett does not address this issue in his Response. (*See* Dkt. 34; Dkt. 35; Dkt. 36.)

**B. Fraudulent Inducement & Civil Conspiracy Claims (Counts I & III)**

Defendants argue that Section 301 of the LMRA preempts Catlett's claims for fraudulent inducement and civil conspiracy, and alternatively that Catlett fails to plead both claims because he fails to exhaust the CBA dispute resolution process outlined by the CBA, fails to allege that the Union breached its duty of fair representation, and that the matters are time-barred.

Catlett also alleges that Defendants committed fraudulent inducement and civil conspiracy by working together to convince him to settle his grievance in exchange for the reinstatement of his job and benefits which they did not intend to provide. As state law torts, these claims are preempted by Section 301 if their terms are "inextricably intertwined" with consideration for the terms of the contract. *Allis-Chalmers Corp.*, 471 U.S. at 211-13. The extent of the duty to contract in good faith "ultimately depends upon the terms of the agreement between the parties," and, as such, is "tightly bound with questions of contract interpretation that must be left to federal law." *Id.* at 216.

In order to find that an employer fraudulently induced an employee into an agreement, the factfinder must evaluate whether the employee could have reasonably relied on the terms. *Smith v. Colgate-Palmolive*, 943 F.2d 764, 768-69 (7th Cir. 1991) ("[T]he jury would be forced to read and interpret the provisions of the [CBA] to determine whether a reasonable person would have relied on the representations of . . . employment.").

Further, to determine whether defendants engaged in a civil conspiracy to breach their fiduciary duty to an employee entails a fact-dependent inquiry to determine whether the defendants' decisions were "invalid or otherwise inconsistent with the terms and spirit of the CBA." *See e.g.*, *Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO, et al.*, No. 06-CV-5160, 2009 WL 2515628, at *24-25 (N.D.Ill Aug. 17, 2009) (finding

9

civil conspiracy claim preempted under § 301 where allegations rely on interpreting CBA terms that define scope of duty and grievance filing procedures).

In any case, a plaintiff must exhaust the grievance or arbitration remedies that are available to him through his CBA before filing suit, unless he establishes that his union breached its duty of fair representation. *Smith*, 943 F.2d at 771. Nearly any claim alleging willful breach of contract could be restated as a tort claim for breach of good-faith obligation. *See Allis-Chalmers Corp.*, 471 U.S. at 220. Plaintiffs could bring these as state court claims, which would effectively allow employees to bypass CBA dispute resolution mechanisms and "eviscerate a central tenet" of labor disputes under Section 301. *See id.* ("[T]he arbitrator, not the court . . . has the responsibility to interpret the labor contract in the first instance.").

Regarding fraudulent inducement, Catlett alleges that Infinity and had no intention of reinstating his employment. He says that no one at Midway expected his arrival on the day he showed up to work, alleging that neither Defendants nor anyone else at Infinity or Parkshore notified Midway about his employment. (*See* Dkt. 1, Ex. A, at 15-16.) Catlett alleges that he dropped his Illinois Department of Human Resources claims in reliance upon this agreement. *Id.* Determining whether Catlett reasonably relied on these terms would require a factfinder to interpret the terms of the agreement. *See Smith*, 943 F.2d at 768-69. Similarly, regarding his civil conspiracy claim, Catlett alleges that Infinity, Midway, Parkshore, Schecter, and DiPaolo "calculated" that Catlett would believe what Stanton told him and distance themselves from the decision by engaging Stanton as a middle man to tell Catlett that Infinity, Parkshore, and Midway had agreed to reinstate his job through the Settlement Agreement. (*See* Dkt. 1, Ex. A, at 15-16.) As in *Merryman*, the question relies on whether the process occurred in a manner inconsistent with the terms and spirit of the CBA. *See e.g.*, *Merryman*, 2009 WL 2515628, at

*24. Catlett's claim thus "substantially depends" on interpreting the terms of the CBA. *Allis-Chalmers Corp*, 471 U.S. at 202-03. Because both the fraudulent inducement and civil conspiracy claims would require interpretation and application of the terms of the agreement, the claims are inextricably intertwined with the CBA and therefore preempted under Section 301. *See id; Crosby*, 725 F.3d at 797.

Nonetheless, Catlett must exhaust the grievance or arbitration remedies that are available to him through his CBA before filing suit under Section 301, unless he establishes that his union breached its duty of fair representation. *See Smith*, 943 F.2d at 771; *Olson*, 800 F.3d at 303-04. Again, Catlett filed his claims in state court even though the CBA required an alternative-dispute resolution process. (*See* Dkt. 1, Ex. A, at 12; Dkt. 1, Ex. B, at 14.) By pursuing his grievances through state court claims rather than pursuing the extent of the remedies available under the CBA's dispute resolution process, Catlett fails to allege that he exhausted his grievance or arbitration remedies and cannot bring these claims under Section 301. Catlett therefore fails to state either a fraudulent inducement or civil conspiracy claim under Section 301.

## C. Age and Disability Discrimination and Retaliation (Count IV) and Aiding and Abetting Discrimination (Counts V and VI)

Catlett further alleges discrimination and retaliation on the basis of age and disability under the Illinois Human Rights Act. Defendants assert that Section 301 of the LMRA preempts these claims. Alternatively, Defendants argue that these claims fail to state a claim because Catlett failed to exhaust the CBA dispute resolution process, he did not allege breach of duty of fair representation against the Union, and the matters are time-barred.

Again, federal labor law does not necessarily preempt state law claims stemming from a labor dispute involving a union-protected employee. *Allis-Chalmers*, 471 U.S. at 220. A state law claim is preempted by Section 301 only if such application requires the interpretation of CBA

terms. *Lingle*, 486 U.S. at 410, 413 (finding that a typical case for discriminatory or retaliatory discharge would require a factual inquiry, not interpretation of contractual protections). Section 301 preemption "says nothing about the substantive rights a State may provide to workers" when a court need not interpret the agreement in order to enforce those rights. *Id.* at 409.

Here, Article 3 of the CBA allows managers to discharge employees for just cause, and Article 5 prohibits discrimination. (*See* Dkt. 1, Ex. B, at 5.) Yet, such broad contractual protections do not require that state law violations depend upon the terms of the private contract because an arbitrator could still find a state law violation for conduct that she interprets the contract to allow. *See Lingle*, 486 at 413. Because Section 301 requires the interpretation of the CBA in order to preempt state law, Catlett's state law claims for age and disability discrimination and retaliation are not preempted under Section 301. Accordingly, the Court does not have original jurisdiction over these claims.

This Court previously denied Catlett's motion to remand these claims to state court because these state law claims derived from the same common nucleus of operative fact as the grievance settlement over which the Court found that it had original jurisdiction. (Dkt. 34.) District courts may decline to extend supplemental jurisdiction where the court has already dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Without the original jurisdiction that the Court had found over Catlett's preempted breach of contract claim, the Court may and does decline to extend supplemental jurisdiction over Catlett's state law claims for discrimination and retaliation.

Aiding and abetting may provide a theory for tort liability, but does not present a separate cognizable cause of action. *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir.2000); *see e.g.*, *F.D.I.C. v. Parzygnat*, No. 10-CV-7038, 2011 WL 3704731, at *6 (N.D.Ill. Aug. 23,

2011) ("[A] n actor who aids and abets the commission of a tort is liable for the underlying tort . . . ."). Because this Court declines to extend supplemental jurisdiction over the principal tort here for retaliation, it similarly declines to hear Catlett's claim for aiding and abetting.

## **CONCLUSION**

For these reasons, the Court grants Defendant's Motion to Dismiss regarding Counts I-III pursuant to Rule 12(b)(6). Without original jurisdiction over these claims under Section 301, the Court declines to exercise supplemental jurisdiction over Counts IV-VI. The case is dismissed.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 12/7/2016